UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA      :

      v.                          :      Criminal No. 3:05CR233(AHN)

ERNEST E. NEWTON II           :

## AMENDED STATEMENT OF REASONS FOR IMPOSING SENTENCE

This criminal case is presently before the court on a limited remand[1] from the Second Circuit for further explanation of why I would have imposed on the defendant, Ernest E. Newton II, the same non-guidelines sentence if the 2003 Sentencing Guidelines Manual applied.

I.   Reasons For Imposing A Non-Guidelines Sentence If the 2003 Manual Applied

At the time I sentenced the defendant I would have imposed the same 60 month sentence, which is above the 33 to 41 month advisory range calculated under the 2003 Guidelines Manual and below the 70 to 87 month advisory range calculated under the 2005

---

[1] While the language of the Summary Order is ambiguous and inconsistent, I do not believe that the remand gives me the power to alter the judgment by imposing a different sentence on the defendant. This conclusion is based on the facts that the Court of Appeals expressly retained jurisdiction, did not vacate the defendant's sentence, and relied on United States v. Jacobsen, 13 F.3d 19 (2d Cir. 1994). Moreover, the final paragraph of the order expressly states that the purpose of the remand was "to provide further explanation for why [I] would have imposed the 60 month sentence if the 2003 Manual applied." Nonetheless, as I indicated on the record and discuss further in this writing, if I am mistaken and I do have the authority on this remand to impose a different sentence, I would do so by reducing the defendant's non-guidelines sentence by six months, thereby imposing a sentence of 54 months' incarceration, regardless of whether the 2003 or 2005 Manual applies.

Guidelines Manual,[2] regardless of whether the 2003 or the 2005[3] Manual applied.  A non-guidelines sentence above the range of the 2003 Manual is appropriate and necessary because the sentencing range of 33 to 41 months' imprisonment does not adequately reflect the factors set forth in § 3553(a), such as the kind and degree of aggravating circumstances that are presented by the nature and circumstances of the offense and the history and characteristics of the defendant.

Specifically, the 2003 guidelines range does not adequately account for the seriousness of the defendant's charged and uncharged conduct over a lengthy period of time and his repeated and continuous betrayal of the public trust through that conduct. For example, his offense level of 27 includes only a 2-level enhancement under § 2C1.1(b)(1) for soliciting more than one bribe.  There is no other way under the guidelines to account for the unusually pervasive, rampant, extensive, and ongoing pattern of his misconduct which includes his admitted use of more than $40,000 from his re-election campaign funds for his personal expenses over a period of at least five years and the fraudulent

---

[2] Neither the defendant nor the government challenged on appeal my finding that the 2005 Guidelines Manual applied and that a sentence within the 70 to 87 month advisory range of the 2005 Manual was excessive.

[3] The Second Circuit does not seek further explanation for why I imposed a sentence below the advisory range calculated under the 2005 Manual.

and deceptive methods he devised to hide the fact that he was siphoning off money from his campaign committee.

The guidelines range calculated under the 2003 Manual also does not account for the fact that the defendant virtually made a business out of his public office by repeatedly and continuously soliciting and accepting bribes, kickbacks, and payoffs from people who sought state and municipal contracts, grants, and financing as well as from his constituents who sought his help for legitimate as well as improper purposes; or the fact that he accepted a no-show job and then demanded a raise from his employer even though he did no work; associated with an individual reputedly connected to organized crime; or the myriad other ways he used his public office to further his own personal and financial interests at the expense of the people of Bridgeport whose interests he was elected to serve.  Indeed, to the extent the defendant lived a life devoted to public service, he did so to a great extent because of the personal and financial benefits that inured to him by virtue of that service.  In other words, as I stated at the time I sentenced him:  "It is inconceivable to me that anyone who serves in the General Assembly could make a business out of it, yet that's what [the defendant] did.  [He] sold [his] office. . . .  When [his] constituents came to [him] for service, [he] didn't serve them – they bought [him]."

In short, the guidelines calculation of 33 to 41 months under the 2003 Manual does not reflect the serious, ongoing pattern of the defendant's wrongdoing. Moreover, the defendant's pattern of egregious, ongoing conduct is not common to all persons convicted of public-corruption crimes.

The 2003 guidelines calculation also fails to adequately account for the loss of public confidence in the honesty and integrity of their elected officials that the defendant's charged and uncharged criminal conduct caused or the fact that he betrayed the public trust at a time when there was a virtual epidemic of highly publicized public corruption in Connecticut, which was so widespread that the state earned the unfortunate nickname "Corrupticut."

Unfortunately, the defendant was not deterred by the corruption scandals involving the former mayor of Bridgeport, Joseph Ganim, the former state treasurer, Paul Silvester, and others. Incredibly, even though he was engaging in the very same corrupt conduct himself, the defendant publicly condemned the unlawful conduct of those public officials by making hypocritical, sanctimonious, and self-righteous statements voicing his concern about state money being used for corrupt purposes, declaring the importance of restoring public trust in government and public officials, and proclaiming that the citizens of Connecticut would not and should not tolerate

unethical behavior by its public officials.

Indeed, these few examples of the defendant's wrongdoing demonstrate that a sentence in the 33 to 41 month advisory guidelines range under the 2003 Manual would not sufficiently reflect the seriousness of his offenses, promote respect for the law, provide just punishment, and afford adequate deterrence, both specifically and generally, to this type of criminal conduct.

The fact that the defendant brazenly continued his corrupt conduct at the same time other politicians in this state were being investigated and prosecuted for the same conduct demonstrates to me that a more severe sentence is necessary to deter such conduct in the future, especially if the defendant is still considering re-entering politics "when this is all over" as he publicly stated at the time he entered his guilty plea.

A more lengthy sentence is also necessary to make sure the defendant gets the message that his corrupt conduct was serious, intentional, and deliberate and not, as he characterized it, a mere mistake in judgement. As I said before, "[he] didn't make mistakes. What [he] was doing was deliberate and pervasive, and it certainly wasn't unintentional. [He] knew exactly what [he] was doing, and [he] had his goals of what [he] wanted to achieve, money. [He] wanted to make money."

Likewise, a sentence within the 2003 Guidelines would not be

a sufficient general deterrent to other politicians in Connecticut and would not restore the public's trust in their elected officials.  In other words, it would not send the necessary message that corruption by elected public officials will not be tolerated and that the epidemic of political corruption that has existed in this state for at least the past ten years has got to stop.  To the contrary, a sentence within the 2003 Guidelines range would send an inappropriate message to other elected officials that corruption would be punished by what effectively would amount to a slap on the wrist.

Finally, a sentence above the 33 to 41 month range calculated under the 2003 Manual is needed to avoid unwarranted sentence disparities among defendants who have been convicted of similar conduct.[4]  For example, the former mayor of Bridgeport, Joseph Ganim was sentenced to a total of nine years (108 months) after being convicted on 23 counts charging similar conduct; and the former state treasurer, Paul Silvester was sentenced to 51 months after he pleaded guilty to accepting bribes in connection with the investment of state pension funds and then cooperated with the government in its investigation, prosecution, and

---

[4]The one-year sentence imposed on former governor John Rowland is distinguishable by the fact that he only pleaded guilty to a one-count information charging him with conspiracy to accept things of value while the defendant pleaded guilty to three felony counts and the evidence against him, with regard to both his charged and uncharged conduct, was extensive and unequivocal, including evidence of obstruction of justice.

conviction of five others who were involved in his bribery scheme.

Moreover, the defendant's disparity arguments are unavailing. Contrary to the examples he provides, he was not convicted of just a bribery offense. He was convicted of bribery/theft of honest services, a scheme to defraud his campaign committee and its contributors, and income tax evasion. And the defendant's statistical arguments purportedly showing disparity are also unavailing in the absence of any information by which the court could make a meaningful comparison such as the number and value of the bribes involved, the value of the benefits sought, the influence wielded by the public official, whether the offender cooperated with the government, and other information showing how those offenders were similarly situated to the defendant.

Nonetheless, the emphasis on all of these aggravating factors should not detract from the fact that there are mitigating circumstances which are relevant to the decision to impose a non-guidelines sentence. Those factors include the defendant's rehabilitation from substance abuse, which indicates a potential for his rehabilitation in this case and shows that he poses a low risk for recidivism and his many years of public service that actually benefitted his constituents, even if his service was motivated in large part by the opportunity for

financial and personal gain.

II. Resentencing

Even though I have construed the language of the Summary Order as only requiring me to provide a further explanation of why I would have imposed the same non-guidelines sentence if the 2003 Sentencing Guidelines Manual applied, I am cognizant of the Summary Order's language that the case was being remanded to me "for resentencing" and that before I resentenced the defendant I should allow him the opportunity "to challenge the grounds for imposing the 60 month sentence if the applicable sentencing range is, pursuant to the 2003 Manual, 33 to 41 months."

Accordingly, I allowed the defendant the opportunity to speak and provide reasons why a sentence of less than 60 months was warranted. After hearing from the defendant about the admirable efforts he has made to rehabilitate himself during the year that he has been incarcerated, the fact that, through his prison employment and a personal loan, he has paid the restitution ordered as part of his sentence, as well his wife's deteriorating medical condition, I now conclude that, if I had the authority on this remand to do so, I would impose a non-guidelines sentence of 54 months regardless of whether the 2003 Manual or the 2005 Manual applied.

Dated this 10th day of April, 2007 at Bridgeport, Connecticut.

_____/s/_____
Alan H. Nevas
United States District Judge